UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SCOTT MATALON )<br>    Plaintiff )<br>)<br>v. )<br>)<br>CITY OF BOSTON, )<br>MARY ANN O'NEIL )<br>JOSEPH HYNNES )<br>JOHN DOES )<br>    Defendants ) | Civil Action No. |

**COMPLAINT AND JURY DEMAND**

This is a "section 1983" civil rights action sounding primarily in false arrest and malicious prosecution. Plaintiff was asleep in his own home, when police barged in claiming to be investigating a robbery. When plaintiff protested the rude and officious treatment, he was roughed up, arrested and charged with crimes.

After having spent approximately $56,000 to defend himself, Plaintiff was exonerated of all criminal allegations.

**PARTIES**

1. The plaintiff Scott Matalon is an individual who lives at 16 Farrington Avenue, City of Boston, County of Suffolk, Massachusetts.

2. The defendant MaryAnn O 'Neill is an individual whose current domicile is unknown to plaintiff but who is steadily employed at the City of Boston Police department, Boston County of Suffolk, Massachusetts.

1

3. The defendant Joseph Hynes is an individual whose current domicile is unknown to plaintiff but who is steadily employed at the City of Boston Police department, Boston County of Suffolk, Massachusetts.

4. Defendant John Does are an individuals whose current domicile is unknown to plaintiff but who is steadily employed at the City of Boston Police department, Boston County of Suffolk, Massachusetts.

## FACTS COMMON TO ALL COUNTS

## THE ARREST

5. On or about September 29, 2010, at approximately 11:00 a.m. plaintiff was asleep on the third floor of his home, at 16 Farrington Avenue, Brighton, Massachusetts.

6. Plaintiff was awakened by a loud commotion emanating from the first floor. The plaintiff owns two parrots, but does not own a dog and prefers not to allow dogs in his home.

7. The plaintiff heard his parrots squeaking in fright and a dog barking.

8. Plaintiff put on a pair of pants, and shirtless hurriedly went downstairs.

9. The plaintiff then observed the defendant Hynes and another Boston Police Officer, Michael Saltalamachia, in his home. Saltalamachia had a dog on a leash.

10. The defendants claimed to be searching for a party suspected of a robbery of a nearby business establishment.

11. Defendant Hynes directed the plaintiff to the front porch.

12. On the porch defendant O'Neil initiated conversation. She screamed at the plaintiff, admonishing him for not responding sooner to their inquiries.

13. Plaintiff stated that he was asleep in the bedroom on the third floor.

14. Plaintiff requested that the police close the door to ensure the safety of his parrots. They refused. Defendant O'Neil and the plaintiff engaged in further conversation during which O'Neil criticized the plaintiff's "attitude."

15. Plaintiff asked the police how long he would be interrogated.

16. O'Neil told him to "shut up."

17. Plaintiff responded to being told to shut up by asserting his rights to speak in his own home.

18. At that point, plaintiff was tackled, forced to the floor and placed under arrest.

19. During the arrest, his arms were twisted extensively and he was slammed face first on the ground.

20. Officer Hynes screamed at plaintiff and called him a "f.ing piece of s..t" Plaintiff was left face down on the porch for approximately ten minutes.

21. Plaintiff was taken to a police station, booked and charged with crimes.

## FORMAL CRIMINAL PROCEEDINGS

22. Mr. Matalon was e charged with a two count criminal complaint criminal; disturbing the peace and resisting arrest.

23. Each of the defendants were instrumental in obtaining the charges and pursuing the charges.

24. Mr. Matalon was forced to hire private counsel, Howard Fisher, Esq. to defend the frivolous criminal case brought against him.

25. On or about October 6, 2011, after a jury trial, plaintiff was acquitted of all charges.

26. The pendency of these charges caused Mr. Matalon to suffer anxiety and stress.

27. The individual defendants' actions were taken with reckless disregard for the plaintiff's constitutional rights. After the charges against Mr. Matalon were dismissed, the City of Boston neither investigated nor disciplined the arresting officers.

## DAMAGES

28. Mr. Matalon was shocked and humiliated at being arrested. He physically suffered a sprained neck, a sprained knee and multiple abrasions, for which he was treated at a hospital.

29. He suffered emotional distress, which included physiological manifestations such as sleeplessness, anxiety, panic attacks, depression, and loss of appetite and weight. He suffered physical pain during his detention. He suffered anxiety over the impact of this arrest on his professional positions and income.

30. As the criminal case progressed, Ms. Matalon was required to utilize substantial personal time to deal with court appearances and lawyer meetings.

31. As stated above, Mr. Matalon spent approximately $56,000.00 defending himself, which expenditure led to his complete exoneration of all criminal charges.

## COUNT ONE
## VIOLATION OF 42 U.S.C. § 1983
## (ALL INDIVIDUAL DEFENDANTS)

32. Mr. Matalon repeats and realleges each and every allegation above stated as though such allegations were set forth herein.

33. By engaging in the conduct described above, the individual defendants deprived Mr. Matalon of clearly established and well settled constitutional rights while acting under color of law. Specifically, the defendants deprived Mr. Matalon of

rights secured and guaranteed to him by the United States Constitution including, but not limited to, his Fourth Amendment right to be free from unlawful search of his premises and seizure of his person and his Fifth and Fourteenth Amendment rights to due process of law, including but not limited to his right to be free from arrest without probable cause.

34. Further, the wrongful acts were undertaken with a grossly reckless disregard of Plaintiff's constitutional rights.

35. Each of the defendants together with the defendant City of Boston and the individual defendants in civil action, engaged in a conspiracy to deprive Mr. Matalon of his rights, privileges and immunities as guaranteed and protected by the Constitution of the United States in violation of the provisions of 42 U.S.C. § 1983.

36. As a result of the defendants' violations of Mr. Matalon's civil rights, he suffered a loss of freedom, loss of enjoyment of life, extreme emotional distress and was otherwise damaged.

37. The above constitutes violations of 42 U.S.C. § 1983 et seq.

### COUNT TWO: VIOLATION OF 42 U.S.C. § 1983 AGAINST CITY OF BOSTON

38. Mr. Matalon repeats and reasserts the allegations contained in the above paragraphs and incorporates them by reference as if fully and completely set forth herein.

39. The City of Boston, as an entity, through law enforcement officers at the highest level, encouraged, aided and abetted the violations of law described above by

actively encouraging the officers to indiscriminately arrest anyone they believed may be 'disrespectful' to them. Boston had an obligation to properly train its police officers on the elements of criminal charges, and on the right of persons to be free from unwarranted intrusions into their homes and the right of persons to be free from unlawful arrests.  Boston did not properly train or supervise its police officers to assure that they complied with the law in arresting people without probable cause. At all pertinent times, Boston had a policy or custom of deliberate indifference to misconduct by its police officers by failing to properly investigate misconduct and to discipline officers.  Boston also had a policy or custom of tolerating a "code of silence" in which police officers understood that they were not to report misconduct by fellow officers.

40. Violations of law described above constituted a policy of the City of Boston.
41. Therefore, the City as an entity, is liable to the plaintiff per 42 U.S.C. § 1983.

## COUNT THREE
## CONSPIRACY IN VIOLATION OF 42 U.S.C. § 1983
## ALL DEFENDANTS

42. Mr. Matalon repeats and reasserts the allegations contained in the above paragraphs and incorporates them by reference as if fully and completely set forth herein.

43. By having engaged in the conduct described above, the Defendants conspired to deprive Mr. Matalon of the equal protection of the law or of the equal privileges and immunities under the law, and they acted in furtherance of the conspiracy, which resulted in the injury to Mr. Matalon described above, in violation of 42 U.S.C. § 1983.

## COUNT FOUR
## VIOLATION OF MASSACHUSETTS CIVIL RIGHTS ACT
## (ALL DEFENDANTS)

44. Mr. Matalon repeats and reasserts the allegations contained in the above paragraphs and incorporates them by reference as if fully and completely set forth herein.

45. By engaging in the conduct described above, including threats, intimidation and coercion, the defendants interfered with and deprived Mr. Matalon of his exercise and enjoyment of his civil rights secured under the laws of the Commonwealth of Massachusetts, in violation of Massachusetts General Laws Chapter 12 § 11I.

46. As a direct and proximate result of the defendants' violations of M.G.L. c. 12 § 11I, Mr. Matalon suffered the injuries described above.

## COUNT FIVE
## FALSE IMPRISONMENT
## O'NEIL, HYNES, AND CITY OF BOSTON

47. Mr. Matalon repeats and reasserts the allegations contained in the above paragraphs and incorporates them by reference as if fully and completely set forth herein.

48. On or about September 28, 2010, Mr. Matalon was unlawfully and intentionally confined against his will, without right or privilege. This was the direct result of the unlawful conduct of the defendants, jointly and severally.

49. As a direct and proximate result of the acts described above, the plaintiff was falsely imprisoned, deprived of his liberty, and therefore, was damaged

## COUNT SIX
## MALICIOUS PROSECUTION
## O'NEIL AND HYNES

50. Mr. Matalon repeats and reasserts the allegations contained in the above paragraphs and incorporates them by reference as if fully and completely set forth herein.

51. Defendants improperly instituted criminal proceedings against Plaintiff by initiating Plaintiff's arrest without probable cause.

52. The defendants did so with malice and without probable cause motivated in part by a desire to justify their intrusive actions against Mr. Matalon and his property.

53. The criminal prosecution of Mr. Matalon was legally and finally terminated in his favor on or about October 5, 2011.

54. As a result of their acts and omissions in causing the commencement and continuation of proceedings against Mr. Matalon, Defendants proximately caused his great damage.

## COUNT SEVEN
## VICARIOUS LIABILITY

55. Mr. Matalon repeats and reasserts the allegations contained in the above paragraphs and incorporates them by reference as if fully and completely set forth herein.

56. To the fullest extent allowable under any theory of law, the City of Boston is vicariously liable for the acts of its agents, servants and employees, including all persons named as defendants, but also including any other persons involved in the unconstitutional and otherwise flawed investigation and prosecution of Mr. Matalon.

## COUNT EIGHT
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### HYNES AND O'NEIL

57. Mr. Matalon repeats and reasserts the allegations contained in the above paragraphs and incorporates them by reference as if fully and completely set forth herein.

58. The intentional and or grossly reckless actions described above are attributable to each defendant, jointly and severally. These actions were outrageous and beyond the scope of common decency.

59. The intentional and or grossly reckless actions described above attributable to each defendant, caused the plaintiff to suffer great emotional distress.

## PRAYERS FOR RELIEF

WHEREFORE, the Plaintiff respectfully requests that this Honorable Court:

1. Order judgment in Plaintiff's favor in such amount as will fully compensate him for his losses to the greatest extent allowed by law;

2. Order such payment of punitive damages as are allowed by law;

3. Use its fullest equitable powers to order the Defendants:

    a.  to write complete and truthful police reports; and

    b.  to testify truthfully in court.

4. Use its fullest equitable powers to order Defendants to institute appropriate police training, supervision and disciplinary response that will require and promote truthful police behavior;

5. Order payment of interest, costs and attorneys fees pursuant to 42 U.S.C. §§ 1983 and 1988 and M.G.L c. 12 § 11H and I, and any other statute or common law theory applicable to these facts; and

6. Order such further relief as this Court deems fair and just.

## JURY DEMAND

**PLAINTIFF RESPECTFULLY REQUESTS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

RESPECTFULLY SUBMITTED,
PLAINTIFF

 /s/ *Robert S. Sinsheimer*
Robert S. Sinsheimer, BBO No. 464940
Lauren Thomas, Esq. BBO No. 667973
Sinsheimer and Associates
92 State Street, 9th Floor
Boston, MA 02109
617-722-9954

Dated:  December 28, 2012