UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SCOTT MATALON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION |
| v. ) | NO. 13-10001-GAO |
| ) | |
| CITY OF BOSTON, et al., ) | |
| ) | |
| Defendants. ) | |

# REPORT AND RECOMMENDATION
# ON DEFENDANT'S MOTION TO DISMISS

October 30, 2013

DEIN, U.S.M.J.

## I. INTRODUCTION

This action arises out of the arrest and prosecution of the plaintiff, Scott Matalon ("Matalon"), for disturbing the peace and resisting arrest. The plaintiff claims that the arrest was based on nothing more than comments he made to police officers after they burst into his home without permission or justification, and that the criminal proceedings against him were frivolous. After Matalon was acquitted of all charges by a jury, he brought this action against the City of Boston ("City" or "Boston"), Boston police officers Mary Ann O'Neill ("O'Neill") and Joseph Hynes ("Hynes"),[1] and various

---

[1] According to the City, the plaintiff misspelled the names of the individual defendants in his complaint. (See Def. Mem. (Docket No. 11) at 2 n.2). This court has used the correct spelling, as provided by the City, throughout this Report and Recommendation.

unnamed officers employed by the Boston Police Department, claiming that the defendants violated both his constitutional and state law rights.

The matter is presently before the court on the "City of Boston's Motion to Dismiss" (Docket No. 10).  By its motion, the City is seeking dismissal, pursuant to Fed. R. Civ. P. 12(b)(6), of all of Matalon's claims against it, including his claims for violations of his civil rights under 42 U.S.C. § 1983 ("Section 1983") (Count II); conspiracy to violate his civil rights under Section 1983 (Count III); violation of his rights under the Massachusetts Civil Rights Act ("MCRA") (Count IV); false imprisonment (Count V); and vicarious liability (Count VII).  Matalon concedes that Counts III, IV and V do not state viable claims against the City and should be dismissed.[2]  Accordingly, they will not be addressed further.  With respect to the remaining claims against the City set forth in Counts II and VII of the complaint, this court finds that Matalon has failed to allege sufficient facts to support a claim for municipal liability under Section 1983, and that his claim for vicarious liability has no legal basis.  Accordingly, and for all the reasons detailed below, this court recommends to the District Judge to whom this case is assigned that the City's motion to dismiss be ALLOWED.

---

[2] In his opposition to the City's motion to dismiss, Matalon specifically acknowledged that his claims against the City for conspiracy and violation of the MCRA could not survive.  (See Pl. Opp. Mem. (Docket No. 17) at 1).  Similarly, at oral argument, Matalon conceded that his claim for false imprisonment against the City could not withstand the motion to dismiss.

## II. STATEMENT OF FACTS

When ruling on a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), the court must accept as true all well-pleaded facts, and give the plaintiff the benefit of all reasonable inferences.  See Cooperman v. Individual, Inc., 171 F.3d 43, 46 (1st Cir. 1999).  Applying this standard to the instant case, the relevant facts are as follows.

### The Plaintiff's Arrest

The events giving rise to this action began on September 29, 2010.  (Compl. (Docket No. 1) ¶ 5).  The plaintiff claims that he was asleep that morning on the third floor of his home in Brighton, Massachusetts when, at about 11:00 a.m., he was awakened by a loud commotion coming from the first floor of his residence.  (Id. ¶¶ 5-6). After putting on some clothing, Matalon allegedly went downstairs to find defendant Hynes and a second police officer, Michael Saltalamachia ("Saltalamachia"), inside his home.  (Id. ¶¶ 8-9).  Saltalamachia was accompanied by a dog, which was frightening Matalon's two pet parrots.  (Id. ¶¶ 6-7, 9).  According to the plaintiff, the officers claimed that they were searching for a suspect who had been involved in the robbery of a nearby business.  (Id. ¶ 10).  However, Matalon contends that they had no justifiable basis for entering his home without his permission.  (See id. ¶ 33).

After the officers explained what they were doing at Matalon's property, Hynes directed the plaintiff to the front porch, where defendant O'Neill was located.  (Id. ¶¶ 10-12).  She allegedly proceeded to scream at him and admonish him for not responding more quickly to the officers' inquiries.  (Id. ¶ 12).  Allegedly, the plaintiff

informed the officers that he had been sleeping at the time they arrived at his home, and he requested that the officers close the door in order to protect his parrots from harm. (Id. ¶¶ 13-14). Matalon claims that the officers refused to shut the door, and that O'Neill acted hostilely toward him by criticizing his attitude. (Id. ¶ 14). He also claims that after he asked the officers how long they intended to interrogate him, O'Neill responded by directing him to "shut up." (Id. ¶¶ 15-16). However, Matalon refused to comply with O'Neill's order, and instead "assert[ed] his rights to speak in his own home." (Id. ¶ 17).

At that point, according to Matalon, he was tackled and forced to the floor where he was placed under arrest and yelled at by Hynes, who called him a "fucking piece of shit." (Id. ¶¶ 18, 20). The plaintiff alleges that his arms were twisted extensively and his face was slammed on the ground during the course of the arrest, and that he suffered various injuries, including a sprained neck, a sprained knee and multiple abrasions, as a result of the officers' actions. (Id. ¶¶ 19, 28). Additionally, the plaintiff contends that he was left face down on the porch for approximately ten minutes before he was transported to the police station for booking. (Id. ¶¶ 20-21).

### The Criminal Proceedings Against Matalon

Matalon asserts that his arrest was unlawful because it was not supported by probable cause. (See id. ¶ 33). Nevertheless, the defendants pursued criminal proceedings against him involving charges of disturbing the peace and resisting arrest. (Id. ¶¶ 22-23). Matalon claims that as a result of those charges, he was forced to retain private counsel, at significant expense, and to take personal time from work. (Id. ¶¶ 24,

30-31).  He also claims that he suffered anxiety and stress, including anxiety over the impact that his arrest would have on his professional life.  (Id. ¶¶ 26, 29).  On October 6, 2011, following a jury trial, Matalon was acquitted of all charges against him.  (Id. ¶ 25).

The plaintiff contends that the individual officers' actions demonstrated a "reckless disregard for the plaintiff's constitutional rights," and that the City failed to conduct an investigation into the circumstances surrounding his arrest or to discipline any of the officers involved.  (Id. ¶ 27).  Thus, according to Matalon, the City effectively condoned the officers' unlawful behavior.  The present motion to dismiss only addresses the sufficiency of the claims against the City.  The individual defendants have not moved to dismiss the claims brought against them.

### III.  ANALYSIS

#### A.  Motion to Dismiss Standard of Review

The City has moved to dismiss Matalon's claims against it for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  Motions to dismiss under Rule 12(b)(6) test the sufficiency of the pleadings.  Therefore, when confronted with a motion to dismiss, the court accepts as true all well-pleaded facts and draws all reasonable inferences in favor of the plaintiff.  Cooperman, 171 F.3d at 46.  Dismissal is only appropriate if the complaint, so viewed, fails to allege a "plausible entitlement to relief."  Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559, 127 S. Ct. 1955, 1967, 167 L. Ed. 2d 929 (2007)).

Two underlying principles must guide the court's assessment as to the adequacy of the pleadings to support a claim for relief.  Maldonado v. Fontanes, 568 F.3d 263, 268 (1st Cir. 2009).  "'First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'  Such conclusory statements are 'not entitled to the assumption of truth.'"  Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)) (internal citations omitted).  "'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.'"  Id. (quoting Ashcroft, 556 U.S. at 679, 129 S. Ct. at 1950).  "This second principle recognizes that the court's assessment of the pleadings is 'context-specific,' requiring 'the reviewing court to draw on its judicial experience and common sense.'  '[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not show[n] – that the pleader is entitled to relief.'"  Id. (quoting Ashcroft, 556 U.S. at 679, 129 S. Ct. at 1950) (internal quotations and citation omitted; alterations in original).

### B.   Count II: Claim for Municipal Liability Under Section 1983

In Count II of his complaint, Matalon is seeking to hold the City liable, pursuant to Section 1983, for violations of his constitutional rights arising out of the alleged intrusion into his home and arrest without probable cause.  The City argues that Count II should be dismissed because Matalon has failed to allege sufficient facts to support a claim of municipal liability under Section 1983.  As detailed below, this court agrees that the

conclusory allegations of wrongdoing on the part of the City are insufficient to state a claim for relief.

### **Municipal Liability – In General**

In order to establish liability against the City under Section 1983, the plaintiff must satisfy "two basic elements: first, that plaintiff's harm was caused by a constitutional violation, and second, that the City [was] responsible for that violation, an element which has its own components." Young v. City of Providence, 404 F.3d 4, 25-26 (1st Cir. 2005). For purposes of its motion to dismiss, the City has not challenged Matalon's claim that the individual officers' actions violated his constitutional rights. Therefore, the question raised is whether Matalon's allegations support a claim that the City is responsible for those violations.

"It is well-settled that municipalities may not be held liable for the constitutional violations of their employees in a § 1983 suit based on a *respondeat superior* theory of liability." Baron v. Suffolk Cnty. Sheriff's Dep't, 402 F.3d 225, 236 (1st Cir. 2005). Instead, "it is when execution of a government's policy or custom . . . by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Id. (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694, 98 S. Ct. 2018, 2037-38, 56 L. Ed. 2d 611 (1978)). Therefore, "to establish municipal liability, 'a plaintiff must show that a policy or custom of the city led to the constitutional deprivation alleged.'" McElroy v. City of Lowell, 741

F. Supp. 2d 349, 353 (D. Mass. 2010) (quoting Santiago v. Fenton, 891 F.2d 373, 381 (1st Cir. 1989)).

In the instant case, Matalon has premised his claim against the City on several alleged policies or customs. As the plaintiff asserts in support of Count II:

> The City of Boston, as an entity, through law enforcement officers at the highest level, encouraged, aided and abetted violations of law described above by actively encouraging the officers to indiscriminately arrest anyone they believed may be 'disrespectful' to them. Boston had an obligation to properly train its police officers on the elements of criminal charges, and on the right of persons to be free from unwarranted intrusions into their homes and the right of persons to be free from unlawful arrests. Boston did not properly train or supervise its police officers to assure that they complied with the law in arresting people without probable cause. At all pertinent times, Boston had a policy or custom of deliberate indifference to misconduct by its police officers by failing to properly investigate misconduct and to discipline officers. Boston also had a policy or custom of tolerating a "code of silence" in which police officers understood that they were not to report misconduct by fellow officers.

(Compl. ¶ 39). As detailed below, however, this court finds that the complaint contains insufficient facts to state a claim based on such policies or customs.

## Failure to Train

This court first considers Matalon's claim that City should be held liable for failure to train its officers. "The liability criteria for 'failure to train' claims are exceptionally stringent . . . ." Barker v. City of Boston, 795 F. Supp. 2d 117, 122 (D. Mass. 2011) (quoting Hayden v. Grayson, 134 F.3d 449, 456 (1st Cir. 1998)). A municipality can only be held liable under such a theory if "'the failure to train amounts

to deliberate indifference to the rights of persons with whom the police come into contact' and . . . 'the identified deficiency in a city's training program [is] closely related to the ultimate injury.'" Young, 404 F.3d at 26 (quoting City of Canton v. Harris, 489 U.S. 378, 388, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989)). Accordingly, "[t]o survive a Rule 12(b)(6) motion to dismiss, a § 1983 claim against a municipality for failure to train police officers must assert a 'sufficient basis for concluding that [city] policymakers reasonably should have anticipated that [the] police would need specialized instruction' in the activity." Miller v. City of Boston, 586 F. Supp. 2d 5, 8 (D. Mass. 2008) (quoting Hayden, 134 F.3d at 456).

Matalon's complaint falls short of meeting these requirements. As an initial matter, "[t]he Complaint does not identify an official City policy that immediately caused the constitutional violation in question." Id. For example, although the plaintiff alleges in a conclusory manner that the City "did not properly train or supervise its police officers to assure that they complied with the law" regarding arrests, he has not alleged any facts describing the substance of the City's training program or identifying any particular deficiencies in that program. See Barker, 795 F. Supp. 2d at 124 (finding that complaint failed to state a claim for violation of plaintiff's Fourth Amendment rights where it lacked "concrete facts supporting its conclusory statement that Boston's training of its officers regarding mental illness was constitutionally deficient"). Nor has Matalon alleged any facts to show that the alleged inadequacies in training caused the constitutional violations at issue. For purposes of a Section 1983 claim, "[a] generalized showing

of a deficient training program is not sufficient.  The plaintiff must establish that the particular officers who committed the violation had been deprived of adequate training, and that this specific failure in training was at least a partial cause of the ultimate injury." Whitfield v. Melendez-Rivera, 431 F.3d 1, 10 (1st Cir. 2005).  Here, the complaint contains no factual allegations showing that the individual police officers who took part in Matalon's arrest lacked appropriate training, or that it was their lack of training which caused them to enter the plaintiff's home unlawfully and arrest him without probable cause.[3]

Even if the plaintiff had alleged a failure to train which led to his arrest, he has not alleged any facts showing that the City had reason to know that the officers involved in the incident posed a risk to the community.  See Miller, 586 F. Supp. 2d at 8 (dismissing claim for failure to train where plaintiff failed to allege that municipality had reason to know that officers involved in alleged unconstitutional conduct posed a risk).  "Absent more specific allegations of an egregious failure on the part of the City to train the . . .

---

[3] Matalon's allegation that "law enforcement officers at the highest level, encouraged, aided and abetted the violations of law [alleged in the complaint] by actively encouraging the officers to indiscriminately arrest anyone they believed may be 'disrespectful' to them[,]" (Compl. ¶ 39), is too vague to support a claim for failure to train.  In particular, it is unclear whether Matalon is referring to supervisory officers at the scene of his arrest or if he is referring to unidentified officials who were employed at the Boston Police Department.  It is also unclear how many officers Matalon is referring to and what connection they had, if any, to officer training.  Without further detail, it is impossible to infer from this allegation that Boston police officers were improperly trained or that the City otherwise maintained a policy of condoning unlawful arrests.

officers, Plaintiff's Complaint is insufficient to state a claim for municipal liability" based on such a theory. Id.

### Failure to Supervise, Investigate and Discipline

This court also finds that the complaint lacks sufficient facts to support a claim of municipal liability based on Boston's alleged failure to supervise, investigate or discipline its police officers. In order to establish liability under such theories, "the Plaintiff must show a persistent failure to [supervise, investigate or] discipline that demonstrates the existence of a custom or policy of Boston." Barker, 795 F. Supp. 2d at 124. Here, the plaintiff has described no specific incidents, other than the one involving the plaintiff's own arrest and prosecution, in which the City allegedly failed to supervise, investigate or discipline police officers who had been accused of misconduct. (See Compl. ¶ 27). As a general rule, "[w]hile the existence of a municipal custom may be evidenced by the repetition of unlawful acts by officers, a single instance of police misconduct in the field, standing alone, is insufficient to establish the endorsement of an informal policy or custom by the City." McElroy, 741 F. Supp. 2d at 354. See also Barker, 795 F. Supp. 2d at 124 ("A single failure to discipline is not sufficient to establish municipal liability"). Here, Matalon has failed to state a claim for municipal liability under Section 1983 based on the single incident alleged in the Complaint.

Citing the Supreme Court cases of Pembaur v. City of Cincinnati, 475 U.S. 469, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986), and Owen v. City of Independence, MO, 445 U.S. 622, 100 S. Ct. 1398, 63 L. Ed. 2d 673 (1980), Matalon argues that on rare occa-

sions, a single incident may be sufficient to establish the existence of an unconstitutional policy or custom.⁴  (Pl. Opp. Mem. (Docket No. 17) at 4).  However, Matalon has not shown that this case presents such an occasion.

In Pembaur, the Supreme Court explained that under certain circumstances, municipal liability under Section 1983 could arise out of a single course of action taken by local government officials.  As the Supreme Court stated,

> it is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances. No one has ever doubted, for instance, that a municipality may be liable under § 1983 for a single decision by its properly constituted legislative body– whether or not that body had taken similar action in the past or intended to do so in the future – because even a single decision by such a body unquestionably constitutes an act of official government policy. See, *e.g., Owen v. City of Independence*, 445 U.S. 622, 100 S. Ct. 1398, 63 L. Ed. 2d 673 (1980) (City Council passed resolution firing plaintiff without a pretermination hearing); *Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S. Ct. 2748, 69 L. Ed. 616 (1981) (City Council canceled license permitting concert because of dispute over content of performance).

Pembaur, 475 U.S. at 480, 106 S. Ct. at 1298.  Thus, the Court concluded that "where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly."  Id. at

---

⁴ Matalon also cites to McClelland v. Facteau, 610 F. 2d 693 (10th Cir. 1979) in support of his argument that a single incident may be sufficient to support a claim for municipal liability under Section 1983.  (See Pl. Opp. Mem. (Docket No. 17) at 4).  However, that case addressed whether supervisory officials could be held directly liable in their individual capacities for failure to train and supervise subordinate officers.  See McClelland, 610 F.2d at 695.  It did not involve issues relating to municipal liability, and has no application to the arguments raised by the parties here in connection with the motion to dismiss.

481, 106 S. Ct. at 1299.  In the instant case, however, Matalon has not attempted to identify any specific policies or any municipal policymakers.  Moreover, Matalon has not made any attempt to link the alleged actions of the defendant police officers to a particular policy established by a final policymaker.  Therefore, the plaintiff has failed to state a claim for municipal liability based on the Supreme Court's holding in Pembaur.

The Supreme Court decision in Owen is similarly unhelpful to Matalon's position.  Although Owen concerned a single action by a municipality, the issue before the Supreme Court in that case was whether Section 1983 "would accord municipalities a qualified immunity for their good-faith constitutional violations[.]"  See Owen, 445 U.S. at 650, 100 S. Ct. at 1415.  The Court did not address the circumstances under which a municipality may be held liable for a single incident under Section 1983.  Thus, Pembaur defines the circumstances in which a claim for municipal liability can be based on a single event.  As detailed above, Matalon has failed to establish a claim under Pembaur.

The plaintiff also argues, without citing any authority, that "[e]vidence of systemic poor training and management lies in the number of officers involved in the horrific incident itself." (Pl. Opp. Mem. at 4).  The First Circuit has found that in certain circumstances, a custom or policy of police misconduct may be inferred from the fact that a large number of officers participated in the alleged unconstitutional behavior.  See, e.g., Bordanaro v. McLeod, 871 F.2d 1151, 1157 (1st Cir. 1989) ("where other evidence of the policy has been presented and the 'single incident' in question involves the concerted action of a large contingent of individual municipal employees, the event itself provides

some proof of the existence of the underlying policy or custom"); Kibbe v. City of Springfield, 777 F.2d 801, 805 (1st Cir. 1985) (finding that single course of action involving "at least ten officers and three separate shooting incidents" supported claims for municipal liability based on improper training). However, no such circumstances have been pled in this matter. According to the complaint, there were only two officers, Hynes and Saltalamachia, who entered Matalon's home unlawfully, and a third officer, O'Neill, who, along with Hynes and Saltalamachia, took part in the plaintiff's arrest. (See Compl. ¶¶ 9-20). Furthermore, the officers' actions occurred during a single exchange with the plaintiff rather than during multiple exchanges involving repeated acts of unlawful behavior. Compare Kibbe, 777 F.2d at 806 (finding that incident involving "many officers and a series of exchanges between police officers and civilians" was "more likely to reflect the operating procedures of the police department"). Consequently, the facts alleged here are not comparable to the scenarios described in cases such as Bordanaro and Kibbe, and do not support an inference that the police in this case were acting pursuant to a widespread policy or custom of arresting individuals without probable cause.

  Finally, Matalon suggests that the existence of a policy or custom of failing to investigate and discipline can be inferred from the existence of a "code of silence," which prevented Boston police officers from reporting misconduct by fellow officers. (See Compl. ¶ 39; Pl. Opp. Mem. at 4-5). Again, this court finds that the plaintiff has made only a conclusory allegation which is not supported by any facts. Compare, e.g., McLin

-14-

v. City of Chicago, 742 F. Supp. 994, 1001-02 (N.D. Ill. 1990) (finding that plaintiffs alleged sufficient facts to support the existence of a widespread code of silence where the complaint included specific allegations describing, among other things, prior incidents in which the code of silence protected police officers from facing discipline for alleged misconduct, and admissions by supervisory officials regarding the existence of a code of silence). There are no factual allegations which would support an inference that officers within the Boston Police Department routinely failed to report misconduct or that a code of silence prevented the City from investigating and disciplining the officers involved in this case. Furthermore, even assuming Matalon had alleged a widespread code of silence, he has not alleged any specific facts linking that practice to the individual defendants' conduct on September 29, 2010. Accordingly, there is nothing in the complaint to indicate that a code of silence was "the 'moving force' behind the constitutional violation[s]" alleged. Young, 404 F. 3d at 25 (quoting Monell, 436 U.S. at 694, 98 S. Ct. 2018). See also McElroy, 741 F. Supp. 2d at 353 (municipal liability requires "both the existence of a policy or custom and a causal link between that policy and the constitutional harm" (quoting Santiago, 891 F. 2d at 381)).

In his opposition to the motion to dismiss, Matalon quotes from a law review article describing a 20-year old report, known as the St. Clair Report, which uncovered problems stemming from a code of silence in the Boston Police Department, including failures to investigate and discipline instances of police misconduct. (See Pl. Opp. Mem. at 5). However, Matalon's reliance on outdated evidence outside the complaint does

-15-

nothing to alter this court's conclusion that he has failed to state a claim based on policy or custom where the complaint contains no facts to indicate that such a policy was in place at the time of Matalon's arrest. Similarly, Matalon's citation to an article describing generally how the "Code of Silence" continues to fuel widespread problems of police abuse does not remedy the deficiencies in his pleading. (See id.). In order to withstand a motion to dismiss, the plaintiff must allege enough facts to state a "plausible entitlement to relief." Rodriguez- Ortiz, 490 F.3d at 95. Matalon's "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to withstand the City's motion to dismiss Count II of the complaint. Maldonado, 568 F.3d at 268 (quoting Iqbal, 556 U.S at 678, 129 S. Ct. at 1949).

In a final effort to avoid dismissal of his claim for municipal liability, Matalon notes that "Boston has already faced a 'Code of Silence'" in the case of Johnson v. Evans, 223 F. Supp. 2d 357 (D. Mass. 2003), and that the plaintiff in that case was successful in withstanding a motion to dismiss. (Pl. Opp. Mem. at 6). However, in Johnson, the defendants moved for dismissal on the grounds of claim preclusion and expiration of the statute of limitations. See Johnson, 223 F. Supp. 2d at 360-61. The court was not asked to consider whether the plaintiff's allegations were sufficient to allege a custom or policy of maintaining a code of silence within the Boston Police Department. See id. Accordingly, nothing in Johnson supports Matalon's assertion that he has stated a claim against the City under Section 1983.

    C.    **Count VII: Claim for Vicarious Liability**

In Count VII, Matalon has asserted a claim against the City by which he is seeking to hold it "vicariously liable for the acts of its agents, servants and employees, including all persons named as defendants, but also including any other persons involved in the unconstitutional and otherwise flawed investigation and prosecution of Mr. Matalon." (Compl. ¶ 56). In the context of claims brought under Section 1983 for violations of a plaintiff's constitutional rights, "[i]t is well established that a municipality is not liable for the tortious actions of its employees simply by virtue of the employment relationship." McElroy, 741 F. Supp. 2d at 353. Therefore, as a matter of law, the plaintiff cannot hold the City vicariously liable for the unconstitutional conduct of its police officers.

Furthermore, Matalon has failed to state a tort claim against the City based on the conduct of its employees. "The Massachusetts Tort Claims Act, Mass. Gen. Laws ch. 258 § 2, provides the exclusive remedy [against a municipal employer] for torts by municipal employees."[5] Doe v. Bradshaw, Civil Action No. 11-11593-DPW, 2013 WL 5236110, at *11 (D. Mass. Sept. 16, 2013) (slip op.). See also Monadnock Display Fireworks, Inc. v. Town of Andover, 388 Mass. 153, 155-56, 445 N.E.2d 1053, 1055-56 (1983) (explaining that prior to enactment of Massachusetts Tort Claims Act, sovereign

---

[5] The Massachusetts Tort Claims Act provides in relevant part that: "Public employers shall be liable for injury ... caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment, in the same manner and to the same extent as a private individual under like circumstances.... The remedies provided by this chapter shall be exclusive of any other civil action or proceeding by reason of the same subject matter against the public employer or, the public employee or his estate whose negligent or wrongful act or omission gave rise to such claim...." Mass. Gen. Laws ch. 258 § 2.

immunity generally protected municipalities from liability for tortious acts of their employees). However, in order to bring a claim under the Massachusetts Tort Claims Act, the plaintiff must first present that claim, in writing, to the public employer. See Antonio v. City of Peabody, 51 Mass. App. Ct. 655, 656, 747 N.E.2d 753, 754 (2001) ("proper presentment is a condition precedent to bringing suit under the [Massachusetts Tort Claims] Act"). In the instant case, Matalon concedes that "there has been no letter sent pursuant to M.G.L. c. 258," and that he "does not view the matter as a "'c. 258' case." (Pl. Opp. Mem. at 7). Therefore, he has not pled a viable cause of action against the City for the alleged wrongdoing of its police officers, and Count VII of the complaint should be dismissed.

## IV.   CONCLUSION

For all the reasons detailed herein, this court finds that Matalon has failed to state a claim for relief against the City. Therefore, this court recommends to the District Judge to whom this case is assigned that the "City of Boston's Motion to Dismiss" (Docket No. 10) be ALLOWED and that all of Matalon's claims against the City be dismissed.[6]

---

[6] The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-05 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-

                           / s / Judith Gail Dein
                           Judith Gail Dein
                           U.S. Magistrate Judge

---

54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985). Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).