**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

**CIVIL ACTION NO. 13-cv-10001-LTS**

SCOTT MATALON,
        Plaintiff,

v.

MARY ANN O'NEIL, JOSEPH HYNES, and JOHN DOES,
        Defendants.

**JOINT PRETRIAL MEMORANDUM**

The Parties in the above-captioned case submit the following as their joint pretrial memorandum pursuant to Local Rule 16.5(D):

**A.** **A concise summary of the evidence which will be offered by each Party with respect to both liability and damages:**

    **PLAINTIFF:**

Scott Matalon was asleep in his own home at about 11:00 a.m. Several police, together with two (2) large German Shepherd police dogs, barged into his house without a search warrant. The police claimed to be pursuing a robber. Suddenly awoken from a deep sleep, Scott came downstairs and verbally protested the Officers' rude and officious treatment. As a result, he was roughed up, arrested and charged with being disorderly and resisting arrest.

Scott elected a jury trial and spent $56,000 on legal fees and expenses to defend himself. The jury found him not guilty of all criminal charges.

Scott Matalon is now fifty (50) years old. From his earliest days, Scott he has chosen an iconoclastic life style some might colloquially label "off-beat." He is well educated. He

routinely chooses to question authority. He has always been successful as both an artist and entrepreneur.

Scott shares his home with other adults who are not related by marriage or consanguinity. They refer to each other as roommates. At the time of the incident, one of the roommates was also his girlfriend; she has since moved out. He loves animals except dogs and is particularly fond of two large parrots who have perches in the home. (He also had two cats, who, amazingly, the birds seem to tolerate.)

Shortly after graduation from music school, Scott founded a software company "Stump World" for the internet management of rock bands.

Scott currently owns a tattoo parlor in Allston called "Stingray Body Art." Stingray is very popular among those that know the local tattoo business. Below are two paragraphs from the website.

> Stingray is Boston's #1 full-service body shop, featuring some of the region's finest custom tattoo artists, piercers and beautiful permanent makeup services in the biggest, cleanest shop anywhere.
>
> Plus, Stingray offers an exceptionally large selection of high-quality body jewelry, including starter jewelry in many colors and sizes with gems and more, handmade plugs and body jewelry crafted from wood, stone, bone and other organic and natural materials, as well as local fine art, t-shirts, jewelry, handcrafted items and more.

Stingray's success has made Scott a fixture in the Allston Brighton community. He is a community activist, well known and liked and has served on several boards.

Scott plays in a band and paints.

He has no criminal record.

**THE HOME INVASION**

Given his life style, Scott tends to sleep until noon; at fifty he is still often out at 2 a.m.-3:00 a.m.

He awoke to a horrific cacophony; the parrots were screeching in fright; the dog was barking louder as the parrots screeched.

He put on a pair of pants and raced downstairs, shirtless. There he found a veritable army of police (4-5 officers) inside the home.

Quite naturally, Scott's initial response was "what the heck is going on." From the beginning, the police acted rudely and officiously. The thought that they had disturbed someone in his own home, who had a right to be annoyed, seemed to have escaped them. Indeed, in her deposition, Sgt. O'Neil openly stated that she expected to be treated as a savior. (Tr. Pp. 61-64) (pages attached; Exhibit A)

They explained they were searching for a party suspected of a robbery of a nearby business establishment. The robbery had in fact occurred; the culprit was described as a young black male wearing a red hoodie.

What ultimately happened can be objectively viewed as a culture clash; which ended with a gross abuse of power. A blow by blow description is unnecessary; there are as many versions as persons present. The police had questions; they wanted answers. Mr. Matalon, who is strongly independent and perhaps even has a natural aversion to authority, wanted the police and the dogs out of his home.

He was calm but curt. When asked for identification, his initial response was that he had no duty to provide it. (This in fact is the law) He was asked to step outside; there was no need to do so except to lure him into a place where the police could later argue he disturbed the peace.

He asked that the door be closed to shield the parrots from the dogs and to avoid their escape. The police refused.

He asked how long he would be interrogated; he was told to "shut up." He was told that he had "an attitude problem."

Upon firmly announcing that he had a right to speak in his own home, Scott was tackled, forced to the floor and placed under arrest. He did not resist; he did scream in pain and anger.

During the arrest, his arms were twisted extensively and he was slammed face first on the ground. Officer Hynes screamed at him and called him an "f'ing piece of s@#t." He was left face down on the porch for approximately ten minutes.

A civilian passerby witnessed the arrest and testified favorably to Mr. Matalon at his criminal trial.

## THE POLICE EXCUSE

It is clear that the police had no right to enter the home. It is equally clear that Mr. Matalon committed no crime; although one of the officers may testify that Mr. Matalon threw the first blow. The police have never satisfactorily explained why they felt they could freely enter Mr. Matalon's home.

Their best shot has been some sort of amorphous suggestion that they were in "hot pursuit." There is no actual evidence of "hot pursuit." **None**. They entered the house upon a hunch; a bad hunch. Defendants, through counsel, have acknowledged that this exception does not apply here.

At one point the officers claimed that a civilian bystander claimed to have seen the robber run through Mr. Matalon's back yard. However, they have never identified the person and the timing was suspect. There is no evidence, not even a scintilla, that the robber went in the house.

If the robber was running, he would have been long gone before the first police even arrived on Farrington Avenue. The distance between the restaurant where the robbery occurred and the home is less than .1 mile. The area is densely populated.

## FORMAL CRIMINAL PROCEEDINGS

Mr. Matalon was charged with assault and battery on a police officer and disturbing the peace.

The only excuse for the initial arrest was the so-called "disorderly count." The interpretation of the term "disorderly" has had a "tortured history" in Massachusetts jurisprudence. Commonwealth v. Sholley, 432 Mass. 721, 727 (2000), *affirmed in part, reversed in part* 432 Mass. 721, *cert. denied* 121 S.Ct. 1621, 532 U.S. 980, *citing* Commonwealth v. Feigenbaum, 404 Mass. 471, 473–474 (1989). The primary difficulty in construing the statute over the years is "defining the offense in a way that avoids any infringement of free speech rights." Sholley, *supra*.

Indeed, in 2010, the Massachusetts legislature reduced penalties for first offense "disorderly" because police were overusing the statute to punish those whose speech they found offensive.

It appears there was no disorderly conduct as a matter of law. See Commonwealth v. Gardner, 84 Mass. App. Ct. 1101 (2011).

The allegation that Mr. Matalon committed an assault is clearly an after the fact effort to justify a mean spirited illegal arrest of a citizen in his own home. Mr. Matalon stands about 5 foot four and weighs 140 lbs. He was on the ground in a fraction of a second.

Mr. Matalon was forced to hire private counsel, Howard Fisher, Esq. to defend the frivolous criminal case brought against him.

A jury acquitted him of all charges after a lengthy trial.  Mr. Matalon spent over $56,000.00 to defend himself. The primary damage is the legal fee of approximately $56,000.00.

The fees of course are only the beginning of a fair award.

Mr. Matalon was shocked and humiliated at being arrested.  He physically suffered a sprained neck, a sprained knee and multiple abrasions, for which he was treated at a hospital.

He suffered emotional distress, which included physiological manifestations such as sleeplessness, anxiety, panic attacks, depression, and loss of appetite and weight.  He suffered physical pain during his detention.  He suffered anxiety over the impact of this arrest on his professional positions and income; insofar as the arrest occurred in his own neighborhood where he is active.  His reputation and standing in the community also took a hit.

As the criminal case progressed, Ms. Matalon was required to utilize substantial personal time to deal with court appearances and lawyer meetings.

**DEFENDANTS:**

This case arises out an incident that transpired on September 29, 2010.  Defendants, Sergeant Maryann O'Neill and Officer Joseph Hynes, were two of many officers who responded to Farrington Avenue in Brighton upon receiving word from dispatch that an armed robber had fled to the area.  The suspect was described as a black male wearing a red shirt.  When Officer Hynes and his partner turned down Farrington Avenue in their cruiser, they were pulled over by a man who appeared to be trying to get their attention.  The man told the officers that he saw a black male run behind 16 Farrington Avenue.  Officer Hynes and his partner approached 16 Farrington.  Sergeant O'Neill arrived at approximately the same time period and observed that two doors into the residence appeared to be open:. : one that served as a secondary door into the foyer, and another that appeared to lead to a basement.  Officers heard what they discerned to be

footsteps upstairs.  Believing that the suspect may have entered the residence, Sergeant O'Neill called for backup, including a K-9 unit.  Officers rang the doorbell and announced their presence several times over the course of several minutes.  There was no response.

The K-9 unit arrived on scene and entered the residence in search of the suspect.  Soon thereafter, the Plaintiff, Scott Matalon, came barreling down the stairs.  He was screaming profanities at the officers, yelling at them to get out of his house.  The officers asked Matalon to come out to the porch so they could explain what was happening—that there was a dangerous, armed suspect in the area and they have reason to believe he fled into the house.  Matalon stepped onto the porch but refused to listen to the officers' explanation of why they were there.  He was belligerent, extremely agitated, and concerned only with berating the officers, screaming things at the officers like "get the fuck out of my house," "this is America," and "you're all dickheads."  Sergeant O'Neill instructed Matalon to calm down, but he refused and instead continued to scream profanities.  Due to the nature of the armed robbery call, coupled with Matalon's extreme and irrational behavior, Sergeant O'Neill was concerned that Matalon might be complicit in the robbery and instructed Officer Hynes to conduct a pat/frisk.  As Officer Hynes attempted to do so, Matalon took a fighting stance and raised his fists, as if he was going to start swinging.  Officer Hynes reached towards Matalon's shoulder, but before he was able to make contact, Matalon struck Officer Hynes in the left shoulder area.  At that point, Matalon was under arrest for assault and battery on a police officer and disorderly conduct.  Several civilians had stopped to watch the incident, including Edward Spitz, who testified that Matalon was, indeed, screaming at the officers.  Matalon was placed stomach first on the ground, cuffed, and brought to the station for booking.  He was booked, arraigned, and released within a couple hours.

Matalon alleges that he sustained a knee and neck sprain and, upon the advice of his attorney, went to the emergency room for treatment on two occasions (for a total cost of $562). According to Matalon himself, the sprains fully resolved in 3 weeks and he did not seek further treatment. Matalon also claims that he suffered emotional distress, but his "distress" amount to nothing more than generalized, garden-variety issues: stress, poor sleeping, anxiety, etc. Regardless, Matalon never sought treatment for these emotional issues. There is no way for a jury to quantify these damages. Plaintiff is not calling an expert to talk about either his physical or emotional injuries as he has none.

Matalon also claims that he lost income and respect in the community as a result of this arrest, but he has produced no evidence whatsoever in support of these allegations. He has not produced any tax returns to suggest that his income decreased in any way. He still maintained all of his positions within the community. Matalon bases these allegations on the fact that the Board of Trade allegedly had reservations about electing him as President, and that certain clients withdrew from the organization while his criminal prosecution was pending. However, Matalon was still elected President and no organization told him that they were withdrawing because of his arrest—rather, these allegations are pure speculation. Matalon has no documented evidence that his reputation in the community was changed in any way as a result of this arrest.

The majority of Matalon's damages come from his criminal defense attorney fees. Matalon claims that he paid approximately $55,000 in attorney's fees—an exorbitant figure for an assault and battery on a police officer/disorderly conduct prosecution. Matalon elected to have his business attorney represent him in the criminal case. As a result, the fees were much higher as this was not the attorney's area of expertise – he had to spend numerous hours learning the basics of criminal law. The fees Matalon seeks to recoup are not reasonable and the

Defendants should not be responsible for Matalon's decision to seek out a non-criminal defense attorney for his criminal prosecution.

In short, aside from his unreasonable attorney's fees, Matalon's documented damages total only $562.

**B.    A statement of facts established by the pleadings, by admissions, or by stipulations:**

1. Plaintiff was arrested on September 29, 2010 and charged with Assault and Battery on a Police Officer and Disorderly Conduct.

2. Plaintiff was tried on the criminal charges and was acquitted by a jury.

3. Defendants Sgt. O'Neill and Officer Hynes were acting in their capacity as Boston Police Officers at all relevant times.

**C.    Any factual issues in dispute:**

1. Whether the Defendants reasonably searched Plaintiff's person and/or property.

2. Whether probable cause existed to arrest Plaintiff for assault and battery on a police officer and disorderly conduct.

3. Whether the Defendants used unreasonable force in arresting the Plaintiff.

4. Whether the Defendants maliciously prosecuted the Plaintiff.

5. The extent of physical and emotional injury, if any, suffered by the Plaintiff as a result of the search, arrest and prosecution.

6. The extent of any other damages, if any, suffered by the Plaintiff as a result of the search, arrest and prosecution.

**D.    Any jurisdictional questions:**

None.

**E.** **<u>Issues of law, including evidentiary questions, together with supporting authority</u>:**

**PLAINTIFF:**

The plaintiff intends on filing a number of motions in limine. One area of particular is with respect to a number of definitions and laws of the Commonwealth of Massachusetts. One such area is that the Plaintiff will be filing a motion for the court to find, as a matter of law, that the defendants did not have probable cause to enter the plaintiff's home. See generally <u>Commonwealth v. Knowles</u>, 451 Mass. 91, 96 (2008) (appended hereto).

Plaintiff also contends that he has a right to lead the police officer witnesses during his direct examination.

**DEFENDANTS:**

The Defendants have filed a number of motions in *limine*: 1) motion to exclude any evidence, argument, or reference to information in Defendants' internal affairs histories or personnel files; 2) motion to exclude Plaintiff's speculative claim of lost income, lost job opportunities, and damage to his reputation; 3) motion to exclude testimony of previously undisclosed witnesses and/or witnesses who do not have relevant information; and 4) motion to exclude testimony or argument regarding Plaintiff's acquittal in his criminal case.

**F.** **<u>Any requested amendments to the pleadings</u>:**

**PLAINTIFF:**

Plaintiff does not have any amendments at this time. However, given recent discussions with opposing counsel, there is a small possibility that, depending on the testimony of one particular witness, the plaintiff may move to amend the listed defendants to add an additional defendant.

**DEFENDANTS:**

　　None.

**G.　Any additional matters to aid in the disposition of the action:**

　　None.

**H.　The probable length of trial:**

　　The Parties anticipate that the trial will take five trial days, starting at 9:00 a.m. and ending at 1:00 p.m. each day, excluding jury selection.

**I.　The names of all witnesses to be called and the purpose of the testimony of each witness:**

　　The parties have agreed to the following trial practice: all non-party fact witnesses shall be sequestered.  At this time, neither party intends to present the testimony of any witness by means of deposition.

　**PLAINTIFF:**

1. Plaintiff, Scott Matalon
   c/o Robert Sinsheimer, Esq., Lauren Thomas, Esq.
   92 State Street, 9th Floor
   Boston, MA 02109
   (He will testify as to his direct knowledge of the underlying events, injuries, damages and criminal case.)

2. Defendant, Sergeant Maryann O'Neill
   c/o Michelle K. Hinkley, Esq., Nicole M. Loughlin, Esq. City of Boston Law Department
   Boston, MA 02201
   (She will testify as to her direct knowledge of the underlying events, use of force and criminal case.)

3. Defendant, Officer Joseph Hynes
   c/o Michelle K. Hinkley, Esq., Nicole M. Loughlin, Esq. City of Boston Law Department
   Boston, MA 02201
   (He will testify as to his direct knowledge of the underlying events, use of force and criminal case.)

4. Officer Ryan Manning
   c/o Michelle K. Hinkley, Esq., Nicole M. Loughlin, Esq. City of Boston Law Department

Boston, MA 02201
(He will testify as to his direct knowledge of the underlying events, use of force and criminal case.)

5. Officer Daryl Tran
c/o Michelle K. Hinkley, Esq., Nicole M. Loughlin, Esq. City of Boston Law Department
Boston, MA 02201
(He will testify as to his direct knowledge of the underlying events, use of force and criminal case.)

6. Officer Michael Saltalamacchia
c/o Michelle K. Hinkley, Esq., Nicole M. Loughlin, Esq. City of Boston Law Department
Boston, MA 02201
(He will testify as to his direct knowledge of the underlying events, use of force and criminal case.)

7. Officer Lissette Garcia
c/o Michelle K. Hinkley, Esq., Nicole M. Loughlin, Esq. City of Boston Law Department
Boston, MA 02201
(He will testify as to his direct knowledge of the underlying events, use of force and criminal case.)

8. Officer John Ho
c/o Michelle K. Hinkley, Esq., Nicole M. Loughlin, Esq. City of Boston Law Department
Boston, MA 02201
(He will testify as to his direct knowledge of the underlying events, use of force and criminal case.)

9. Sergeant Richard Keefe
c/o Michelle K. Hinkley, Esq., Nicole M. Loughlin, Esq. City of Boston Law Department
Boston, MA 02201
(He will testify as to his direct knowledge of the underlying events, use of force and criminal case.)

10. Officer Elvin Aviles
c/o Michelle K. Hinkley, Esq., Nicole M. Loughlin, Esq. City of Boston Law Department
Boston, MA 02201
(He will testify as to his direct knowledge of the underlying events, use of force and criminal case.)

11. Officer Shawn McKenzie
c/o Michelle K. Hinkley, Esq., Nicole M. Loughlin, Esq. City of Boston Law Department
Boston, MA 02201
(He will testify as to his direct knowledge of the underlying events, use of force and criminal case.)

12. Officer Samil Silta
    c/o Michelle K. Hinkley, Esq., Nicole M. Loughlin, Esq. City of Boston Law Department
    Boston, MA 02201
    (He will testify as to his direct knowledge of the underlying events, use of force and criminal case.)

13. Detective Joseph Scaringello
    c/o Michelle K. Hinkley, Esq., Nicole M. Loughlin, Esq. City of Boston Law Department
    Boston, MA 02201
    (He will testify as to his direct knowledge of the underlying events, use of force and criminal case.)

14. Detective Martin Kane
    c/o Michelle K. Hinkley, Esq., Nicole M. Loughlin, Esq. City of Boston Law Department
    Boston, MA 02201
    (He will testify as to his direct knowledge of the underlying events, use of force and criminal case.)

15. Edward Spitz
    540 Centre Street
    Newton, MA
    (He will testify as to his first hand observations of the officer's actions and the arrest of Mr. Matalon.)

16. Cameron S. Merrill,
    100 State St, Suite 200,
    Boston MA 02109
    (He will testify about the prosecution of Mr. Matalon and, specifically, the criminal trial.)

17. Howard S. Fisher, Esq.,
    Greenbaum, Nagel, Fisher & Paliotti, LLP,
    200 High St, 4th Floor, Boston, MA 02110
    (He will testify about the underlying criminal case, damages in the form of legal fees, the criminal trial and criminal process as applied to Mr. Matalon's case.)

18. Felix Augusto-Perez,
    49 Florence Street, #2,
    Roslindale MA 02131
    (He will testify about the facts, circumstances and timeline of the armed robber that initiated the call for police. Including a description of the alleged robber.)

19. John Nyquist
    23 Farrington Ave.
    Allston, MA
    (He will testify about his interactions with these same police officers on that day in the course of his employment at the Farrington Inn. Also contributing to the timeline of events.

20. Ron Arra, Jr.
    16 Farrington Ave.
    Allston, MA 02134
    774-313-0940
    (He will testify that was one of Mr. Matalon's roommates and that it was not his custom, nor the custom and practice of the home to leave the front door open. He will testify that when he left the home the door was closed.)

21. Michelle Jordan
    81 St. Andrews Road
    East Boston, MA 02128
    801-577-0085
    (She will testify that was one of Mr. Matalon's roommates and that it was not her custom, nor the custom and practice of the home to leave the front door open. She will testify that when he left the home the door was closed.)

22. W. Daanen Krouth
    4439 NE Killingsworth St.
    Portland, OR 97218
    (He will testify that was one of Mr. Matalon's roommates and that it was not his custom, nor the custom and practice of the home to leave the front door open. He will testify that when he left the home the door was closed.)

23. Emily Osmun
    381 Medford Street, Apt. #1
    Somerville, MA 02145
    339-223-2995
    (She will testify that was one of Mr. Matalon's roommates and that it was not her custom, nor the custom and practice of the home to leave the front door open. She will testify that when he left the home the door was closed.)

24. Erik Wolfe
    721 E. Highland Dr. #205
    Williston, ND 58801
    727-631-4859
    (He will testify that was one of Mr. Matalon's roommates and that it was not his custom, nor the custom and practice of the home to leave the front door open. He will testify that when he left the home the door was closed.)

**The Plaintiff reserves the right to present deposition testimony of any witness who may be deemed unavailable by the Court.**

**DEFENDANTS:**

1. Plaintiff, Scott Matalon
   c/o Robert Sinsheimer, Esq., Lauren Thomas, Esq.
   92 State Street, 9th Floor
   Boston, MA 02109
   (Will be summoned to discuss his knowledge of the arrest and his subsequent alleged damages)

2. Defendant, Sergeant Maryann O'Neill
   c/o Michelle K. Hinkley, Esq., Nicole M. Loughlin, Esq.
   City of Boston Law Department
   Boston, MA 02201
   (Will be summoned to testify to her knowledge of the arrest.)

3. Defendant, Officer Joseph Hynes
   c/o Michelle K. Hinkley, Esq., Nicole M. Loughlin, Esq.
   City of Boston Law Department
   Boston, MA 02201
   (Will be summoned to testify to his knowledge of the arrest.)

4. Officer Ryan Manning
   c/o Michelle K. Hinkley, Esq., Nicole M. Loughlin, Esq.
   City of Boston Law Department
   Boston, MA 02201
   (Will be summoned to testify to his knowledge of the arrest.)

5. Officer Daryl Tran
   c/o Michelle K. Hinkley, Esq., Nicole M. Loughlin, Esq.
   City of Boston Law Department
   Boston, MA 02201
   (Will be summoned to testify to his knowledge of the arrest.)

6. Officer Michael Saltalamacchia
   c/o Michelle K. Hinkley, Esq., Nicole M. Loughlin, Esq.
   City of Boston Law Department
   Boston, MA 02201
   (Will be summoned to testify to his knowledge of the arrest.)

7. Officer Lissette Garcia
   c/o Michelle K. Hinkley, Esq., Nicole M. Loughlin, Esq.
   City of Boston Law Department
   Boston, MA 02201
   (Will be summoned to testify to her knowledge of the arrest.)

8. Officer John Ho
   c/o Michelle K. Hinkley, Esq., Nicole M. Loughlin, Esq.
   City of Boston Law Department
   Boston, MA 02201
   (Will be summoned to testify to his knowledge of the arrest.)

9. Sergeant Richard Keefe
   c/o Michelle K. Hinkley, Esq., Nicole M. Loughlin, Esq.
   City of Boston Law Department
   Boston, MA 02201
   (Will be summoned to testify to his knowledge of the arrest.)

10. Officer Elvin Aviles
    c/o Michelle K. Hinkley, Esq., Nicole M. Loughlin, Esq.
    City of Boston Law Department
    Boston, MA 02201
    (Will be summoned to testify to his knowledge of the arrest.)

11. Officer Shawn McKenzie
    c/o Michelle K. Hinkley, Esq., Nicole M. Loughlin, Esq.
    City of Boston Law Department
    Boston, MA 02201
    (Will be summoned to testify to his knowledge of the arrest.)

12. Officer Samil Silta
    c/o Michelle K. Hinkley, Esq., Nicole M. Loughlin, Esq.
    City of Boston Law Department
    Boston, MA 02201
    (Will be summoned to testify to his knowledge of the arrest.)

13. Detective Joseph Scaringello
    c/o Michelle K. Hinkley, Esq., Nicole M. Loughlin, Esq.
    City of Boston Law Department
    Boston, MA 02201
    (Will be summoned to testify to his knowledge of the arrest.)

14. Detective Martin Kane
    c/o Michelle K. Hinkley, Esq., Nicole M. Loughlin, Esq.
    City of Boston Law Department
    Boston, MA 02201
    (Will be summoned to testify to his knowledge of the arrest.)

15. Edward Spitz
    540 Centre Street
    Newton, MA
    Telephone number unknown
    (Will be summoned to testify to his knowledge of the arrest.)

16. Howard S. Fisher, Esq.
    Greenbaum, Nagel, Fisher & Paliotti, LLP
    200 High Street, 4th Floor
    Boston, MA 02110
    (Will be summoned to testify to his knowledge of Plaintiff's criminal defense.)

**The Defendant Officers reserve the right to present deposition testimony of any witness who may be deemed unavailable by the Court.**

**J.      List of uncontested exhibits:**

1. Boston Police Department Incident Report of Armed Robbery. As marked for identification: Exhibit 1.

2. Turret Tapes. As marked for identification: Exhibit 2.

3. Arrest Booking Form (including booking photograph of Plaintiff). As marked for identification: Exhibit 3.

4. Photographs of Plaintiff. As marked for identification: Exhibit 4, A-L.

5. Photographs of porch/entranceway. As marked for identification: Exhibit 5, A-K.

6. Sketch of floor layout. As marked for identification: Exhibit 6.

7. Breakdown of Legal Charges for Professional Services Rendered to Plaintiff from October 5, 2010-October 6, 2011 from Greenbaum, Nagel, Fisher & Paliotti, LLP. As marked for identification: Exhibit 7.

8. Cancelled checks for legal services. As marked for identification: Exhibit 8.

9. Criminal Docket in <u>Commonwealth v. Matalon</u>, Docket No. 1008 CR 1180. As marked for identification: Exhibit 9.

10. CAD Sheet, As marked for identification: Exhibit 10.

11. Medical Bills from St. Elizabeth's Medical Center. As marked for identification: Exhibit 11.

12. Medical Records from St. Elizabeth's Medical Center. As marked for identification: Exhibit 12.

**K.** **List of Exhibits to be offered at trial:**

1. Boston Police Department Incident Report of Arrest of Scott Matalon. As marked for identification: Exhibit 13.

2. Scott Matalon's Driver's License. As marked for identification: Exhibit 14.

**L.** **The Parties' respective positions on any remaining objections to the evidence identified in the pretrial disclosures as well as any deposition testimony being offered:**

**PLAINTIFF:**

Plaintiff objects to Officer Hynes' police report being introduced into evidence.

**DEFENDANTS:**

The Defendants will object to the introduction of Scott Matalon's driver's license and the proposed redaction of references to the marijuana that was seized on Scott Matalon after his arrest.

| | |
|---|---|
| Respectfully submitted,<br>PLAINTIFF, Scott Matalon<br><br>By his attorneys:<br><br><br>/s/ Robert S. Sinsheimer<br>Robert S. Sinsheimer (BBO#464940)<br>Lauren Thomas  (BBO#667973)<br>Sinsheimer & Thomas<br>92 State Street, 9th Floor<br>Boston, MA 02109<br>617-722-9954<br>rsinsheimer@sinsheimerlaw.com<br>lthomas@sinsheimerlaw.com | Respectfully submitted,<br>DEFENDANTS, Mary Ann O'Neill and Joseph Hynes,<br><br>By their attorneys:<br><br>/s/ Michelle K. Hinkley<br>Michelle K. Hinkley (BBO#675609)<br>Nicole M. Loughlin (BBO#675535)<br>Assistants Corporation Counsel<br>City of Boston Law Department<br>Room 615, City Hall<br>Boston, MA 02201<br>617-635-3238 (Hinkley)<br>617-635-4039 (Loughlin)<br>Michelle.Hinkley@boston.gov<br>Nicole.Loughlin@boston.gov |